UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Gilbert Shaw,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

No. 1:25-cv-2015-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

(ECF Nos. 12, 14)

## I. Introduction

Plaintiff Gilbert Shaw seeks judicial review of a final decision of the Commissioner of Social Security denying his application for benefits.

## II. Procedural Background

On April 15, 2021, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act alleging disability as of August 1, 2016.

The Commissioner denied Plaintiff's claim initially on August 18, 2021, and on reconsideration on November 23, 2021. AR 6. The ALJ held a hearing on July 16, 2024. AR 45–64. On September 10, 2024, the ALJ issued an unfavorable decision. AR. 18–40. The Appeals Council denied Plaintiff's request for review on July 8, 2025, and this appeal followed. AR. 5–10[1]

## III. The Disability Standard

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 6, 7.

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a Claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but it is less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation and quotations omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the Agency's decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his/her physical or mental impairment or impairments are of such severity that s/he is not only unable to do his/her previous work, but cannot, considering his/her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which s/he lives, or whether a specific job vacancy exists for him/her, or whether s/he would be hired if s/he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for an ALJ to employ when evaluating the alleged disability of a claimant. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether the claimant has engaged in substantial gainful activity during the period for which Plaintiff is alleging he or she experiences a disability; 2- whether the claimant has a medically determinable "severe impairments" affecting the claimants ability to perform basic work activities; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in the agency's regulations (20 C.F.R. § 404, Subpart P, Appendix 1); 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant has the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV. <u>The ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of April 15, 2021. AR 23.

At step two, the ALJ found that Plaintiff had the following severe impairments: asthma, obstructive sleep apnea, left knee medial meniscus tear, chondromalacia and osteoarthrosis, borderline intellectual functioning, anxiety disorder, chronic systolic heart failure, cardiomyopathy, pulmonary arterial hypertension, hypertension, angina pectoris, apical defect, and obesity. AR 23.

At step three, the ALJ found that Plaintiff did not have an impairment, or combination thereof, that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the following RFC:

> the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), except the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for approximately four hours and sit for approximately six hours, in an eight-hour workday. The claimant cannot climb ladders, ropes and scaffold and can occasionally climb stairs and ramps. The claimant can occasionally stoop, crouch and balance, as balance is defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles (SCO-DOT). The claimant cannot kneel and crawl. The claimant should have only occasional exposure to atmospheric conditions, no exposure to extreme heat or cold, and cannot perform work in near proximity to moving mechanical parts, nor work in high, unprotected places, all as rated by the SCO-DOT. The claimant can understand, remember, and carry out simple instructions and tasks. The claimant should perform only low stress work, which is defined as requiring only occasional changes in a routine work setting, occasional changes in work duties, occasionally decision-making and no work on a moving conveyor belt.
>
> AR 27

At step four, the ALJ found had no past relevant work. AR 33.

At step five, in reliance on the testimony of a vocational expert (the VE), the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: routing clerk, order caller, office helper, and document scanner. AR 34. Accordingly, the ALJ found that Plaintiff was not disabled at any time since the application date of April 15, 2021. Id.

## V. Issues Presented

Plaintiff asserts one claim of error: the ALJ erred in discounting Plaintiff's testimony based on the objective evidence. MSJ at 17, ECF No. 12.

### A. RFC (Generally)

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which comprises the most that a claimant is still capable of doing despite the claimant's particular limitations. This RFC represents an assessment "based on all the relevant evidence" contained within the Certified Administrative Record. 20 C.F.R. § 416.945(a)(1). The residual functional capacity must consider all of the claimant's impairments, whether those impairments are severe or non-severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

conflicting evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

**B. Subjective Complaints (Generally)**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**C. Analysis**

To begin, the ALJ found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. AR 28.

Having found no malingering, the ALJ was required to identify clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptoms.

**1. ALJ's Summary of The Testimony**

The ALJ offered the following summary of the testimonial evidence, the accuracy and completeness of which the parties do not dispute:

> At the time of the hearing, the claimant lived independently with his girlfriend, his nephew, and his stepson, both adults. The claimant is right-handed (Hearing Recording: 02:07:48). He does not work because it is hard for him to work, and he has difficulty breathing and he has difficulty holding a job. He has swelling in his legs and feet every day. He takes medication for swelling and then has a need to urinate throughout the day. The medication helps with the swelling, but he still elevates his legs throughout the day for thirty minutes to one hour (Hearing Recording: 02:11:43). He has shortness of breath after standing or walking longer than ten to fifteen minutes. He also has an injury to his knee. He sits most of the day, but then his knees get stiff. He has to get up every thirty to forty-five minutes. He has a cane but does not use it as much as he should, it was not prescribed by a doctor. He does not leave the house often. He has difficulty with chest pain and uses inhalers and nebulizer treatments throughout the day. He can lift twenty pounds or so, lifting anything heavier causes wheezing; he can stand for ten to fifteen minutes, swelling in his lower extremities affects his balance. He drives two to three times a week and can prepare simple meals like a sandwich (Hearing Recording: 02:19:55). He cannot bend his knee to put on a sock or shoe.
>
> AR 28.

Plaintiff emphasizes here that:

> Medical evidence is a relevant factor in determining the severity of a claimant's symptoms. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) However, it is well settled in the Ninth Circuit that an ALJ may not discredit a claimant's subjective pain and symptom testimony and deny benefits solely because the pain or symptoms alleged are not supported by objective medical evidence. See, Vertigan, 260 F.3d at 1049; Bunnell v. Sullivan, 947 F.2d 341, 346-347 (9th Cir. 1991)
>
> MSJ at 18.

**2. Discussion of Plaintiff's Symptoms**

Mental health records are omitted here as they are not at issue.

**i. <u>Asthma; Sleep Apnea</u>**

The ALJ explained:

> The treatment records indicate a diagnosis of asthma and that treatment with nebulizer and inhaler substantially improve symptoms related to asthma (Exhibit 3F/8). The claimant's weight and height indicated a body mass index of 70,[2] indicating severe obesity (Exhibit 3F/3). A sleep study indicated that the referring diagnoses included morbid[3] obesity, insomnia, non-restorative sleep, asthma, witnessed apnea and hypersomnia (Exhibit 3F/20). The results of the sleep study showed very severe sleep apnea (Exhibit 2F). However, the study results also indicated that there was a dramatic improvement in the underlying obstructive sleep apnea and that snoring was eliminated with CPAP (Exhibit 3F/23). On follow-up the claimant's impairments continued to include sleep apnea and asthma associated with severe obesity (Exhibit 3F/3). The claimant reported significant improvement in morning headaches with use of the CPAP. AR 28-29.

Defendant argues that, "The ALJ also noted that treating providers assessed his asthma symptoms as "mildly persistent." Tr. 29, 475; see also Tr. 411, 414, 417, 466, 550, 554, 590, 600 (all noting same)."

Although Plaintiff's medical records do show that an April 2021 telehealth visit noted substantial improvement in Plaintiff's asthma with nebulizer and inhaler (AR 416), and that a July 19, 2020 sleep study record noted dramatic improvement to Plaintiff's sleep apnea condition with CPAP, it is also important to underscore that in that same 2020 study it was noted under the "Recommendations" heading that Plaintiff "has clinically severe obstructive sleep apnea and should be cautioned regarding driving while drowsy." (Exh. 2F, pg 8).

The ALJ further noted:

> In January 2020, the claimant sought <u>emergency treatment for shortness of breath</u> (Exhibit 10F/3). The claimant reported shortness of breath, wheezing and cough. At the time of presentation, the claimant was wheezing and did not improve with breathing treatment (id.). <u>He was admitted and stayed for several days</u>, with treatment including albuterol, nebulizer

---

[2] Over 400 lbs at 5 foot 5.

[3] Morbid obesity is a BMI of 40, or a BMI of 35 if accompanied by obesity related health conditions. Thus, Plaintiff's BMI of 70 was approximately <u>double</u> the threshold for morbid obesity.

> and O2 (Exhibit 10F/22). The claimant improved and was sent home with albuterol, Dulera, Medrol Dosepak, ProAir and Ventolin (id.). Follow-up treatment included a telehealth visit in April 2021, when the claimant complained of increased wheezing, itchy throat, and severe allergies but also reported that using the nebulizer and inhaler provided substantial improvement of symptoms. The symptoms related to asthma were found to be mildly persistent and medications are refilled.
>
> Then, in July 2021, the claimant sought emergency treatment for shortness of breath and chest pain, again (Exhibit 7F/13). At that time, he reported that he had been using his inhaler frequently without relief. The claimant was admitted for four days. On examination, there was distant breath sounds, and bilateral diffuse wheezing (id.). Treatment included IV Solu-Medrol, duoneb and nebulizer, he was given Lasix and oxygen (Exhibit 7F/39).
>
> The treatment records indicated difficulty breathing, scattered and inspiratory wheezing in November and December 2021 with refill of inhaler (Exhibit 9F/52). In March 2022, the claimant reported coughing up blood, in addition to other complaints of asthma symptoms, wheezing, and shortness of breath (Exhibit 9F/47). Despite these complaints, the examination was unremarkable with lungs clear to auscultation, no wheezing, rales, or rhonchi, or distress; …

Of significance is Plaintiff's January 2020 hospitalization over several days due to wheezing, cough, and shortness of breath which was not initially improved with treatment though Plaintiff ultimately improved and was sent home.

Thereafter, on July 21, 2021, following the April 2021 telehealth visit, Plaintiff again sought emergency treatment for shortness of breath and wheezing (Exhibit 7F, pgs. 11/13). He was assessed with acute exacerbation of asthmatic bronchitis. Id. At that time Plaintiff reported that he had been using his inhaler frequently without relief and was "admitted" for four days. Id. On examination during this visit there were distant breath sounds and bilateral diffuse wheezing and his treatment included a number of medications. (Exhibit 7F, pg. 13). Then, in March 2022, despite a normal physical exam, the Plaintiff reported coughing up blood in addition to other complaints of asthma symptoms (Exhibit 9F/47).

In sum, Plaintiff's two hospital admissions clearly confirm disabling effects of his asthma and as such it cannot be said, based upon the record set forth above, that the ALJ's finding concerning Plaintiff's asthma was inconsequential to the ultimate non disability determination. See, Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v.

Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

**ii. Left Knee Impairment**

The ALJ explains:

> In 2018, the claimant sought treatment for left knee pain (Exhibit 1F/1). He reported that he stepped out of a car and heard a "pop". At that time, an MRI of the left knee showed a linear vertical medial meniscus tear seen in the mid-body involving the peripheral aspect, mild osteoarthritis involving the medial compartment, mild degenerative signal seen at the medial collateral ligament and ACL, but no ligamentous tear, small knee joint effusion, mild muscular atrophy, and mild tri-compartmental chondromalacia (Exhibit 1F/2). Examination notes indicated 1+ pitting edema in the lower extremities, left knee stiffness, and pain with active and passive range of motion. In July 2023, the claimant complained of 7/10 left knee pain and 10/10 pain with weight bearing and movement. In September 2023, Edwin Guzman, PA-C administered left knee injections (Exhibit 9F/14). In October 2023, the examination notes indicated that the claimant had a normal gait, no cough, no tachypnea, no wheezes and normal psychiatric examination (Exhibit 9F/12).
>
> On examination in July 2021, during the consultative examination, the claimant was able to get out of the chair in the waiting room and walk at a normal speed back to the exam room without assistance. He sat comfortably. He was able to easily get on and off of the exam table and easily able to bend at the waist to take off his shoes and socks and put them back on, demonstrating good dexterity and good flexibility. He was a very large obese gentleman with a very thick neck and upper airway with breath sounds audible across the room consistent with his sleep apnea. His extremities were warm without cyanosis, clubbing, or edema. The claimant had some skin changes circumferentially around the distal right lower leg more than the distal left lower leg, consistent with some lymphedema; however, there was no pitting there. The skin was slightly thickened and slightly shiny (Exhibit 5F/5). Knee exams bilaterally revealed no redness, heat, swelling, tenderness, effusions, ligamentous laxity, or crepitus (Exhibit 5F/6). Strength was 5/5 in the bilateral upper and lower extremities, including grip. There was normal bulk and tone; and no atrophy noted. The claimant was able to walk on toes and heels and had normal station, normal gait, normal finger-nose, and negative Romberg. He provided a very quick and good history and responded to questions quite quickly and appropriately. He was a very pleasant gentleman. AR 29.

Defendant argues:

Further, despite alleging problems sitting due to knee pain (Tr. 28, 51, 54), the ALJ

> explained Plaintiff's knee examination showed no redness, heat, swelling, tenderness, effusions, ligamentous laxity, or crepitus (Tr. 29, 454-56, 558). Consistent with these normal findings, a left knee MRI showed mostly "mild" abnormalities. Tr. 29, 390

Here, the ALJ relied on benign knee findings from the July 2021 consultative examination. However, there is no evidence that the underlying pathology found in the 2018 MRI had resolved (AR 391). Specifically, the ALJ described the 2018 MRI as follows:

> "MRI of the left knee showed a linear vertical medial meniscus tear seen in the mid-body involving the peripheral aspect, mild osteoarthritis involving the medial compartment, mild degenerative signal seen at the medial collateral ligament and ACL, but no ligamentous tear, small knee joint effusion, mild muscular atrophy, and mild tri-compartmental chondromalacia." (Exhibit 1F/2)."

Although Defendant explains that the MRI findings were mostly mild abnormalities, in the years <u>following</u> the July 2021 consultative examination, the ALJ noted, "In July 2023, the claimant complained of 7/10 left knee pain and 10/10 pain with weight bearing and movement. In September 2023, Edwin Guzman, PA-C administered left knee injections (Exhibit 9F/14)."

In sum, even if the above medical findings do not clearly establish that standing alone Plaintiff does not have a significant abnormal knee condition, which Plaintiff has not contended otherwise, but as Plaintiff explained when describing how standing is impeded by respiratory distress and leg edema, "it doesn't help that my knee is not, my knee is injured." AR 53. Thus, Plaintiffs knee impairments can be described as one important piece of the overall clinical picture when considering why Plaintiff contends that he can't stand more than 10–15 minutes.

**iii. <u>Chronic Systolic Heart Failure, Cardiomyopathy, Pulmonary Arterial Hypertension, Hypertension, Angina Pectoris, Apical Defect</u>**

The ALJ discussed these conditions as follows:

> Consistent with the claimant's testimony, the June 2024 records includes a PET myocardial multiple rest and stress test with CT (Exhibit 15F/22). The study showed a <u>large size defect</u> of moderate intensity involving mid to distal anterior, basal to distal inferior, as well as the apical segment (Exhibit 15F/23).
>
> . . .

> In March 2022, the claimant reported coughing up blood, in addition to other complaints of asthma symptoms, wheezing, and shortness of breath (Exhibit 9F/47). Despite these complaints, the examination was unremarkable with lungs clear to auscultation, no wheezing, rales, or rhonchi, or distress; <u>however, at that time, a CT study showed enlarged main pulmonary artery consistent with pulmonary arterial hypertension</u> (Exhibit 9F/51).
>
> With regard to the claimant's cardiovascular impairments, the record supports some limitation but not to the degree alleged. As noted by the claimant during the consultative examination, he has a history of congenital defect that was procedurally fixed at infancy (Exhibit 5F/2). The was claimant prescribed daily Lasix. In September 2021, the claimant sought treatment for cardiomyopathy. His LVEF was mildly decreased at 45% based on a July 2021 echocardiogram (Exhibit 14F/2). In May 2022, cardiology records indicated that the ejection fraction was normal; <u>however, in July 2022, the ejection fraction was again 45-50%,</u> and lisinopril was initiated. In January 2024, the cardiology follow-up showed an ejection fraction of 65% with ongoing drug therapy. The claimant had one episode of chest pain, but denied lower extremity edema. The claimant's blood pressure was well controlled (Exhibit 14F/11). The claimant lost 30 pounds with the help of Wegovy, which made a lexiscan test possible (Exhibit 14F and 15F/22). <u>The scan showed a large size defect of moderate intensity</u> involving mid to distal anterior, basal to distal inferior. as well as the apical segment. There was no reversibility seen, defect size was more than 20% of the myocardium, and reversibility was 0% (Exhibit 15F/23). (emphasis added).

Plaintiff's documented cardiac and pulmonary history contains the following: 1- a June 2024 record showing a <u>large</u> size defect of <u>moderate</u> intensity involving mid to distal anterior, basal to distal inferior, as well as the apical segment; 2- a July 2021 ER visit for shortness of breath <u>and chest pain (angina)</u> resulting in a 4-day admission; 3- a September 2021 treatment for cardiomyopathy noting left ventricle ejection fraction (LVEF) mildly decreased at 45%; and 4- a March 2022 episode coughing up blood, and where CT showed enlarged main pulmonary artery consistent with pulmonary arterial hypertension.

(Exhibit 3F/23)." AR 28-29.

Hospital admission records note: 1- extensive findings of cardiomyopathy; 2- an episode of coughing up blood; 3- CT results consistent with pulmonary arterial hypertension, chest pain (angina pectoralis); and 4-findings consistent with congestive heart failure. These support the severe impairment finding at step two.

As Plaintiff explains:

> "Mr. Shaw testified that he has not been able to sustain work during the past 15 years due to shortness of breath, wheezing, knee pain, swelling of his legs and feet, and a feeling of heaviness in his legs." (Doc.12, p 13); (emphasis added).

In sum, Plaintiff's pulmonary and cardiac condition sufficiently undermine the ALJ's finding that Plaintiff can perform light work, including the ALJ's finding that Plaintiff has the ability to stand and/or walk for approximately four hours and sit for approximately six hours in an eight-hour workday.

### iv. Leg Edema

Plaintiff explains**:**

> " Mr. Shaw estimates that he can stand for up to 15 minutes at one time before he needs to sit down due to swelling and heaviness in his legs, tightness in his chest, and poor balance. Id. He can sit in one position for up to 45 minutes before he needs to stand up and move around for about10 minutes to avoid stiffness and pain in his legs and knee"**.** (Doc 12, p 14)

The ALJ explained as follows:

> With regard to the claimant's reports of limitation related to swelling in the lower extremities, his testimony is inconsistent with the evidence in the record. During the consultative examination in July 2021, there was evidence of a "bit of lymphoedema"(Exhibit 5F). However, in subsequent treatment notes, the examination notes are negative for edema and in many cases where claimant complains of swelling, none is found on examination (Exhibits 11F/23, 14F and 15F). Additionally, the record does not mention use of a cane. The residual functional capacity, described above, adequately addresses limitations related to morbid obesity, cardiology diagnoses, asthma, and knee issues with the restriction to only 4 hours of standing or walking, with no kneeling or crawling due to left knee issues and obesity.

AR 28–31.

Defendant argues:

> Additionally, although Plaintiff alleged he needed to elevate his legs due to daily leg swelling (Tr. 28, 52-53), the consultative physician observed only a "bit of lymphedema in the legs but no obvious pitting edema" (Tr. 30, 453) and treatment records showed Plaintiff was negative for leg edema or exhibited no edema of swelling (Tr. 30, 815, 974, 976, 983, 985).

Plaintiff counters:

> The ALJ's attempts to point to an inconsistency between Mr. Shaw's statements and the objective medical evidence fail. The ALJ states that "[w]ith regard to the claimant's reports of limitation related to swelling in the lower extremities…examination notes are negative for edema and in many cases where claimant complains of swelling, none is found on examination." (AR 29, citing AR 814, 973-988, 989-10634 ) The first record the ALJ cites to is merely a "Facesheet" and contains only identification and insurance information. (AR 814) The ALJ's remaining reference to the record is to 91 pages, without explanation. See, Holohan, 246 F.3d at 1208 [ALJs "must explain what evidence undermines the testimony"]. Regardless, Mr. Shaw testified that despite being prescribed "water pills" for swelling and typically elevating his legs for 30 to 60 minutes each day, his legs swell in the evenings. (AR 52-53). Examinations with no clinical findings of edema is not inconsistent with his testimony. Nor does the ALJ's statement that "the record does not mention use of a cane" constitute an inconsistency between Mr. Shaw's testimony and medical evidence. (AR 29) Mr. Shaw testified that he uses a cane daily inside his home and that it was provided to him by a family member not a doctor. (AR 54-55).

Contrary to the ALJ's finding of no leg edema, some exams did note 1+ pitting edema, which is the mildest form of pitting edema. (See https://my.clevelandclinic.org/health/symptoms/pitting-edema (explaining that grade 1 pitting edema is the mildest form)).

Plaintiff testified that he was prescribed a "water pill" for this condition, "but his legs swell every evening despite the medication". (Doc. 12, p13). Importantly, because Plaintiff primarily experiences leg edema during the evening, unless it is established that all of the jobs identified by the ALJ require work in the evening hours, Plaintiff's functionality during a normal workday would not seem be affected by his leg swelling, nor would it seem to require leg elevation breaks during the workday.

In sum, Plaintiff fails here to demonstrate how ALJ's finding on this issue was error. Even assuming it was error, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).

**VI. Conclusion**

Except for Plaintiff's claims regarding leg edema, Plaintiff's other conditions all support the contention that Plaintiff's impairments would prevent him from meeting the exertional demands of modified light work, which include the finding that Plaintiff has the ability to stand and/or walk for approximately 4 hours and sit for approximately 6 hours in an eight-hour workday. Thus, the ALJ's non disability determination is not supported by substantial evidence.

Remand is therefore appropriate for the ALJ to develop the record as necessary to evaluate the impact of Plaintiff's impairments as discussed above and determine whether Plaintiff has the ability to perform modified light work, including the ability to stand/walk for 4 hours and sit for approximately 6 hours in an 8 hour workday.

Finally, see Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (noting that, generally when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.).

**VII. Order**

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 12) is **GRANTED**.
2. Defendant's cross motion (Doc. 14) is **DENIED.**
3. This matter is **REMANDED** to the Commissioner of Social Security Pursuant to Sentence Four of 42 U.S.C. § 405(g).
4. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **July 22, 2026** **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE